[884 NYS2d 64]

In the Matter of RICHARD A. MARCUS (Admitted as RICHARD ADAM MARCUS), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, June 16, 2009

## APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Faith Lorenzo* of counsel), for petitioner.

*Richard A. Marcus,* Valencia, California, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

By order of the Supreme Court of the State of California filed November 30, 2007, the respondent was suspended from the practice of law for a period of three years, the execution of the suspension was stayed, and the respondent was placed on probation for three years on condition that he would be suspended for nine months. Although the aforementioned order addressed only the imposition of discipline, the order incorporated by reference the findings and conclusions of the Review Department of the California State Bar Court set forth in an order filed August 9, 2007. As disclosed in the August 9, 2007 order, the respondent was suspended based upon a finding that he engaged in an act involving moral turpitude, dishonesty, or corruption in violation of section 6106 of the California Business and Professions Code by: (1) "arranging a sham marriage with the intent of emancipating a minor in order to circumvent a court order, while simultaneously prosecuting an appeal seeking to overturn the same order," (2) failing to inform either the California Superior Court or the California Court of Appeals of the material information consisting of the minor's marriage, and (3) continuing to prosecute the appeal despite knowing of the minor's intent to marry and of the subsequent marriage.

Basic Underlying Facts

The discipline imposed by the State of California emanates from the respondent's representation in a custody dispute concerning two young girls, Courtney and Melissa, between their father and maternal grandparents after the death of their mother in 1997. At that time, Melissa, then 11 years of age, and Courtney, then 10 years of age, began living with their maternal grandparents, the Weisses, in Los Angeles. The father relocated

to Placerville, California, and the children remained with their grandparents while they finished their school year.

On July 23, 1999, the grandparents, by their attorney Melodye S. Hannes, filed a petition for guardianship of the minors. In August 1999, the grandparents were appointed temporary guardians. Courtney decided to live with her father, and the grandparents' guardianship was terminated as to her. However, as to Melissa, the temporary appointment was to remain in place until the trial on the petition for guardianship.

The respondent became cocounsel of record with Hannes in April 2001. Following a three-day trial, the trial judge issued an oral judgment denying the petition for guardianship, but issued a 30-day stay of the order returning Melissa to her father to allow her to finish school and to permit the grandparents to appeal the judgment.

The respondent and Hannes explored the available options to avoid returning Melissa to her father, which were: (1) speak with the father, (2) await the outcome of an application for a stay pending appeal, and (3) emancipate Melissa, then 16 years old, by having her marry her boyfriend. The emancipation option was considered a "backup" position to an appeal. If the appeal was successful, the marriage would be annulled. If the appeal was unsuccessful, Melissa could use the marriage to avoid complying with the order.

The respondent researched whether a temporary guardian could consent to a minor's marriage in California. The respondent and Hannes discussed the possibility of the Bahamas as a jurisdiction in which Melissa could marry with the Weisses' consent. Hannes concluded after her research that a temporary guardian could consent to the marriage of a minor in the Bahamas. The respondent believed that they had a nonfrivolous argument that the grandparents' temporary guardianship remained in place even after the petition for guardianship was denied because of the trial judge's 30-day stay.

An issue arose as to whether Melissa should be presented with the emancipation option. After calling the State Bar ethics hotline for guidance, the respondent believed that he had an obligation to present the option to Melissa.

On June 12, 2001, the trial court issued a written judgment denying the petition for guardianship, directed that Melissa be returned "forthwith" to the father, and granted the grandparents a 30-day stay of the directive to return Melissa to the

custody of her father. The trial court specifically found, inter alia, that it was in Melissa's best interest to be returned to her father's custody.

Hannes and the respondent agreed that Hannes would present the emancipation option to Melissa. On or about June 25, 2001, Melissa decided to marry her boyfriend. Melissa asked Hannes to accompany her to the Bahamas. The respondent agreed that Hannes should accompany Melissa to ensure that all the proper procedures were followed. Hannes prepared the necessary papers, purchased the tickets and flew to the Bahamas with Melissa on June 28, 2001.

On June 26, 2001, the respondent moved in the trial court for a stay of enforcement of the judgment. On June 27, 2001, he appealed the custody decision, and on June 29, 2001 filed a petition for a writ of supersedeas in the California Court of Appeals to stay so much of the judgment as directed that Melissa be returned to her father. In none of these applications did the respondent mention Melissa's decision to marry.

The respondent pursued the appeals. After conducting limited research, he believed that Melissa's emancipation did not render the appeal academic.

Melissa was married on July 2, 2001. According to the respondent, Melissa became his client after the marriage and she asked him to keep the marriage a secret. Melissa returned to her father on July 7, 2001.

On July 19, 2001, the respondent filed a request in the California Court of Appeals for an immediate stay of the judgment. In a declaration attached to the motion, the respondent reported "two new events" of which the California Court of Appeals should be aware. One of the "two new events" related to Melissa's deteriorating mental state. The respondent did not disclose the fact of the marriage to the California Court of Appeals. The California Court of Appeals summarily denied the petition for writ of supersedeas and the request for a stay.

On July 30, 2001, the father learned about the marriage when he found a note from Melissa in his mailbox. The note said that she had married and was leaving to start a new life. The father brought actions seeking Melissa's return and an annulment. In addition, he moved to dismiss the appeal as academic.

On January 9, 2002, the California Court of Appeals issued an order to show cause, questioning why the appeal was not rendered academic by the marriage, why the appellants should

not be estopped from denying the validity of the marriage, and why sanctions should not be imposed for maintaining a frivolous appeal by failing to inform the court of the changed circumstances. In a published opinion dated March 19, 2002, the California Court of Appeals dismissed the appeal (*see In re Guardianship of Melissa W.*, 96 Cal App 4th 1293, 1296-1299, 118 Cal Rptr 2d 42, 43-46 [2002], *cert denied sub nom. Fran W. v Terry W.*, 537 US 949 [2002]). In addition, the respondent and Hannes were sanctioned $13,004 for pursuing a frivolous appeal, and the matter was referred to the California State Bar. The respondent sought review by the California Supreme Court, which was denied on May 22, 2002. Subsequently, Melissa's marriage was annulled on the basis that the consent obtained from the grandparents was invalid as a matter of law.

State Bar Procedural History

On September 5, 2003, the California State Bar charged the respondent and Hannes with seven counts of misconduct. A six-day joint trial was held between November 2004 and April 2005. The hearing judge severed the two cases and issued a decision in the respondent's case on March 16, 2006. The hearing judge found the respondent culpable of moral turpitude in counts one and two, dismissed counts three, four, six, and seven as duplicative, and found the evidence was insufficient to sustain count five.

The Review Department of the California State Bar Court (hereinafter the State Bar Court) conducted an independent review. In an opinion on review dated August 9, 2007, it adopted the findings and conclusions of the hearing court as to all counts, except count five, for which the State Bar Court found culpability, but dismissed as duplicative. The State Bar Court agreed that the respondent violated section 6106 of the California Business and Professions Code by: (1) "jointly planning and arranging a sham marriage with the intent of emancipating Melissa in order to circumvent a court order, while simultaneously prosecuting an appeal seeking to overturn the same order," and (2) "failing to inform either the Superior Court or the Court of Appeal of Melissa's marriage, and by continuing to prosecute the appeal despite knowing of her intent to marry and of the subsequent marriage." The State Bar Court further found that the respondent violated rule 3-210 of the California Rules of Professional Conduct by advising that the Weisses and Melissa violate a valid court order.

The State Bar Court found no mitigating facts. To the contrary, it found that respondent's failure to appreciate the

seriousness of his conduct to be an aggravating factor. Under the circumstances, the State Bar Court recommended suspending the respondent from the practice of law for three years, staying the execution of the suspension, placing the respondent on probation for three years, and imposing a "nine-month actual suspension" from the practice of law.

In an order filed on November 30, 2007, the Supreme Court of California adopted the recommendation and imposed discipline.

The Grievance Committee for the Ninth Judicial District (hereinafter the Grievance Committee) served the respondent with a notice pursuant to 22 NYCRR 691.3 advising him of his right to file a verified statement setting forth any of the defenses to the imposition of reciprocal discipline enumerated in 22 NYCRR 691.3 (c) and to demand a hearing at which consideration would be given to any of the defenses raised. The respondent submitted a verified statement in which he requested a hearing, asserting the following defenses: (1) there was such an infirmity of proof establishing the misconduct that this Court could not accept as final the findings of the court in California as to his misconduct, and (2) the imposition of reciprocal discipline would be unjust.

A hearing was held on August 15, 2008, at which the respondent appeared pro se.

The Grievance Committee now moves to confirm the report of the Special Referee and impose such reciprocal discipline as the Court deems just and proper. The respondent cross-moves to disaffirm the Special Referee's report. However, should the Court decide to impose discipline, the respondent urges that the discipline imposed be private and that the order contain no recitation of the underlying facts.

At the hearing, a complete record of the California proceeding, consisting of 112 exhibits, was admitted into evidence pursuant to the stipulation of the parties. The respondent did not call any witnesses but, instead, made a lengthy statement on his own behalf. The petitioner relied on the stipulated documents. After the hearing, both parties submitted proposed findings of fact and conclusions of law.

The respondent's testimony consisted of a series of arguments, while referencing various state court documents. His initial argument addressed the burden of proof. The respondent maintained that this Court had to apply a clear and convincing

standard since that was the standard applied in the California proceedings. The respondent contended that the evidence failed to support the findings that he: (1) planned and arranged for a sham marriage to circumvent a court order, while simultaneously prosecuting an appeal to overturn the same order, and (2) sought to mislead or deceive any court by failing to inform the court of the marriage. He maintained that he had a non-frivolous argument that the Weisses could consent to the marriage in their capacity as temporary guardians because they retained authority to consent by virtue of the stay granted, which was a blanket stay. The respondent maintained that he reasonably believed that the marriage did not moot the appeal. Hence, he contended that the evidence was insufficient to find that he intended to deceive the appellate court.

With regard to the imposition of discipline, the respondent argued that any discipline imposed should be made retroactive to the effective date of his California suspension, and that any decision imposing discipline should not contain any recitation of the facts because the order of the Supreme Court of the State of California did not contain any recitation, and the opinion on review of the State Bar Court was designated "Public Matter—Not Designated for Publication." The respondent acknowledged that the decision was available to any member of the public upon request. The Grievance Committee pointed out that the decision of the Hearing Department of the State Bar Court, which was the initial decision and included a complete recitation of the facts, is published on the Internet.

The Special Referee concluded that the respondent did not "come close" to meeting his burden of proof on his infirmity of proof defense. The Special Referee found nothing that persuaded him that the respondent did not egregiously violate the basic ethical obligation of an attorney to uphold the integrity of the legal system, and that the respondent's concern for the welfare of a young girl "did not justify in any way conduct that involved circumventing a court order, ratifying a plan to arrange her marriage in a foreign country and withholding this clearly critical information from the court." The respondent's conduct in bringing the court's attention to "two new events," while omitting mention of the marriage, the Special Referee found was "clearly pure artifice."

In support of his cross motion to disaffirm, the respondent merely reiterates the arguments he made before the Special Referee. We conclude that the respondent failed to establish his

infirmity of proof defense. The respondent's contention that this Court must apply a clear and convincing standard of proof would have this Court sit as an appellate tribunal with respect to the findings of another jurisdiction, which is clearly impermissible (*see Matter of Herman*, 32 AD3d 84 [2006]; *Matter of Kersey*, 27 AD3d 118 [2006]).

In view of the respondent's lack of remorse, failure to appreciate the seriousness of his conduct, and the deceptive nature of his misconduct, we find that the imposition of reciprocal discipline is warranted.

Accordingly, the application is granted, and effective immediately, the respondent is suspended from the practice of law for a period of three years based upon the discipline imposed on him in the State of California.

PRUDENTI, P.J., MASTRO, RIVERA, SPOLZINO and SKELOS, JJ., concur.

Ordered that the petitioner's application to impose reciprocal discipline is granted; and it is further,

Ordered that the petitioner's motion to confirm the Special Referee's report is granted and the respondent's cross motion to disaffirm is denied; and it is further,

Ordered that pursuant to 22 NYCRR 691.3, the respondent, Richard A. Marcus, admitted as Richard Adam Marcus, is suspended for three years, commencing July 16, 2009, and continuing until further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of three years upon furnishing satisfactory proof (a) that during the said period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (c) that he has complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c); and (d) that he has otherwise properly conducted himself; and it is further,

Ordered that the respondent, Richard A. Marcus, admitted as Richard Adam Marcus, shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court,

the respondent, Richard A. Marcus, admitted as Richard Adam Marcus, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Richard A. Marcus, admitted as Richard Adam Marcus, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).